[Cite as *State v. Howard*, 2022-Ohio-2347.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 21CA11 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Phillip Howard, | : | |
| Defendant-Appellant. | : | **RELEASED 6/29/2022** |

_____

<u>APPEARANCES</u>:

Tyler C. Haslam, Haslam Law Firm LLC, Huntington, West Virginia, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Andrea M. Kratzenberg, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.

_____

Hess, J.

{¶1} Phillip Howard appeals from a judgment of the Lawrence County Court of Common Pleas convicting him of gross sexual imposition. In his sole assignment of error, Howard contends that the trial court erred when it denied his Crim.R. 29(A) motion for a judgment of acquittal because the state failed to offer sufficient evidence that he compelled the victim to submit by force or threat of force. After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, we overrule the assignment of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} The Lawrence County grand jury indicted Howard on one count of gross sexual imposition in violation of R.C. 2907.05(A)(1) and (C)(1), a fourth-degree felony. He pleaded not guilty and the matter proceeded to a jury trial. Although multiple witnesses testified at trial, most relevant to this appeal is the testimony of I.B.

{¶3} I.B. testified that on August 2, 2019, when she was 16 years old, she went to the Howard home for a sleepover with Howard's daughter, her best friend at the time. In the early morning hours of August 3, 2019, after drinking some alcohol Howard had purchased for them, the girls laid down in the bed in his daughter's bedroom to go to sleep. If one stood at the foot of the bed, the right side of the bed was closest to the door, and the left side of the bed was closest to the window. I.B. laid on the side of the bed closest to the window, on the left side of her body. It was a small bed, so there was "just a little space between" the girls, probably around a foot. I.B. was wearing her own underwear and a t-shirt and sweatpants she borrowed from Howard's daughter.

{¶4} At some point, Howard's daughter appeared to be asleep but I.B. was still awake. I.B. testified that Howard opened the bedroom door, went to the space between the window and I.B.'s side of the bed, rubbed I.B.'s back, and kissed the top of her head. I.B. knew it was Howard from the way he breathed and walked and from his hand, which is "bigger than anyone else's." I.B. thought Howard was "just going to say goodnight or whatever" and "just kept laying there." Howard then put his hand under the front of her shirt, touched her breasts, and "kind of moved his hands around." He made "some mumbling, whispering noise" near her head. He "kind of lifted" her shirt up and started kissing or licking her down her back. He pulled down the back of her pants and her

underwear and licked between her buttocks. I.B. testified that Howard then grabbed her right leg and tried to roll her over to face him, but she locked her legs so he could not get to her vagina, and he only moved her "slightly." In a recorded statement I.B. made shortly after the incident, she indicated that Howard had tried to turn her over before he pulled her pants down.

{¶5}    I.B. testified that she tried to get Howard to stop by moving her arms as if she was going to wake up. Howard "backed away for a second," but I.B. still looked like she was asleep, so he "came back and tried to touch [her] again the second time for a few seconds." I.B. acted like she was waking up again, and Howard pulled her pants up but not her underwear, and he ran from the room. I.B. testified that she thought it was "the safest option" for her to pretend to be asleep during the encounter instead of telling Howard to get away from her or kicking him. She testified that Howard was "clearly * * * a lot bigger than" her, and in this type of situation, "you kinda like go into shock like that. And like, you, like, try to move but you can't! Like you really just can't! I was just scared! I was just scared." I.B. testified that she is a small girl, and Howard is large man at around six foot, four inches tall and 300 pounds. According to an August 3, 2019 incident report from the Lawrence County Sheriff's Department which is in evidence, Howard was 50 years old, weighed 275 pounds, and is six foot, four inches tall, and I.B. is five foot, three inches tall and weighed 125 pounds.

{¶6}    Testing of the interior back panel and back waistband of I.B.'s underwear revealed a DNA mixture with two contributors: Howard and I.B. Howard was the major contributor, with his DNA outnumbering I.B.'s DNA by about a four-to-one ratio. The estimated frequency of the occurrence of Howard's DNA profile was rarer than one in one

trillion unrelated individuals. Testing of the interior chest area of the t-shirt I.B. was wearing revealed a DNA mixture. I.B. was the major contributor, and there was additional DNA from other individuals which was not of sufficient quality for comparison but which included some male DNA.

{¶7} At the close of the state's case, Howard made a Crim.R. 29(A) motion for a judgment of acquittal, which the trial court denied. The jury found him guilty as charged, and the trial court sentenced him to 18 months in prison.

## II.  ASSIGNMENT OF ERROR

{¶8} Howard presents one assignment of error:

The trial court erred when it denied Appellant's Crim.R. 29(A) motion for acquittal because the State failed to offer sufficient evidence on the element of "force or threat of force" as required by R.C. 2907.05(A)(1), and as defined under R.C. 2901.01(A)(1), in order to prove its case beyond a reasonable doubt and sustain a conviction on the same.

## III.  LAW AND ANALYSIS

{¶9} In his sole assignment of error, Howard contends that the trial court erred when it denied his Crim.R. 29(A) motion for a judgment of acquittal because the state failed to offer sufficient evidence of the force or threat of force element of gross sexual imposition. Howard asserts there is no evidence that he used force or threat of force sufficient to overcome I.B.'s will. He observes that in *State v. Burton*, 4th Dist. Gallia No. 05CA3, 2007-Ohio-1660, ¶ 38, a forcible rape case, we stated that when a victim is asleep when sexual conduct begins "the state may satisfy its burden with evidence of only the minimal force required to manipulate the victim's body or clothing to facilitate the assault." Howard suggests such force is insufficient to overcome the will of a victim like I.B. who was awake throughout the encounter. Howard maintains that there is no evidence that

he used violence against I.B., constrained her, or attempted to prevent her from leaving. Howard also suggests that I.B.'s testimony about the two times she pretended to wake up and caused him to stop touching her demonstrates that he did not overcome her will.

{¶10} Crim.R. 29(A) provides: "The court on motion of a defendant * * * after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In reviewing the sufficiency of the evidence for a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395, ¶ 13. "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Musacchio v. United States*, 577 U.S. 237, 243, 136 S.Ct. 709, 193 L.Ed.2d 639 (2016), quoting *Jackson* at 319.

{¶11} R.C. 2907.05(A)(1) states:

No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:

(1) The offender purposely compels the other person * * * to submit by force or threat of force.

{¶12} "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). " 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). " 'Force' means *any* violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." (Emphasis added.) R.C. 2901.01(A)(1). The trial court gave the jury instructions on acting purposely, sexual contact, and force which tracked or largely tracked the statutory definitions and additionally defined "threat" to mean "a statement or conduct, whether direct or indirect, exerting pressure sufficient to overcome the will of another or make another fearful or apprehensive of injury or harm."

{¶13} In addressing force or threat in a rape case, the Supreme Court of Ohio has explained that "[a] defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct * * *." *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), paragraph one of the syllabus. In

addition, R.C. 2907.05(D) provides that "[a] victim need not prove physical resistance to the offender in prosecutions under [R.C. 2907.05]."

{¶14} After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of gross sexual imposition proven beyond a reasonable doubt. There is evidence that Howard had sexual contact with I.B., who was not his spouse, touching her breasts and buttocks. Howard used force when he manipulated I.B.'s clothing, grabbed her leg, and tried to roll her over. *See generally State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988) (removing victim's panties and laying her on a bed were "both acts of compulsion and constraint that are independent of the act of rape"); *State v. Dyer*, 2d Dist. Montgomery No. 28671, 2021-Ohio-2329, ¶ 21 (pulling down victim's pants while she was bending over was sufficient to establish force element of rape because even though the "manipulation of the victim's clothing took minimal force" given "the element of surprise," the force "went beyond the force that was inherent in the crime itself").

{¶15} Although I.B.'s testimony suggests Howard did not use a great amount of force, " '[t]he word "any" specified in the definition of "force" recognizes that various crimes upon various victims require different degrees and manners of force.' " *State v. Umphries*, 4th Dist. Ross No. 11CA3301, 2012-Ohio-4711, ¶ 17, quoting *State v. Sullivan*, 8th Dist. Cuyahoga No. 63818, 1993 WL 398551, *4 (Oct. 7, 1993). The amount of force needed "depends upon the age, size and strength of the parties and their relation to each other." *Eskridge* at paragraph one of the syllabus (explaining that the force and violence necessary to commit rape depends on these factors). At the time of the encounter, Howard was 50 years old, and I.B. was only 16 years old. I.B. testified that she thought

it was safer to pretend to be asleep than overtly resist Howard because he was "a lot bigger than" her, and she was in shock and scared. Howard is over a foot taller than I.B. and weighed 150 to 175 pounds more than her. One could infer Howard was stronger than I.B. given their age and size disparity. Additionally, I.B. was in a vulnerable position during the encounter—she was lying in a bed, and her ability to exit the bedroom was hindered by the fact that she was on the side of the bed furthest from the door, there was a physically imposing man directly to her right and between her and the window, and Howard's daughter was directly to I.B.'s left. Given these circumstances, any rational trier of fact could have found that Howard purposely compelled I.B. to submit by force or threat of force. The evidence supporting this conclusion is not negated by the fact that I.B. successfully avoided additional sexual contact by pretending to wake up.

**{¶16}** For the foregoing reasons, we conclude that the state presented sufficient evidence to support a conviction for gross sexual imposition. Therefore, the trial court properly denied Howard's Crim.R. 29(A) motion for a judgment of acquittal. Accordingly, we overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the LAWRENCE COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
      Michael D. Hess, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**